10 F.3d 761
 Bankr. L. Rep. P 75,647
In re Alberto Diaz MASVIDAL, Debtor.
CONTINENTAL NATIONAL BANK OF MIAMI, Ocean Bank, Plaintiffs-Appellees,
v.
Jeanette E. TAVORMINA, Defendant-Appellant,
Alfonso Andrade Ochoa, Movant-Appellant.
 No. 92-5041.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 30, 1993.
 
 Arthur S. Weitzner, Weitzner & Co., P.A., Miami, FL, for Tavormina.
 Arthur Halsey Rice, Rice & Reiser, P.A., Miami, FL, for OCHOA.
 Joel L. Tabas, Tabas & Singerman, P.A., Bill Ullman, Miami, FL, for plaintiffs-appellees.
 Appeals from the United States District Court for the Southern District of Florida.
 Before FAY and CARNES, Circuit Judges, and JOHNSON, Senior Circuit Judge.
 FAY, Circuit Judge:
 
 
 1
 Jeanette Tavormina ("Trustee") and Andrade Ochoa ("Ochoa") appeal an order from the District Court for the Southern District of Florida. The district court entered an order reversing the bankruptcy court's order granting summary judgment in favor of the Trustee. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. Because we find that the mere service of a writ of garnishment does not establish a lien under Florida law, we reverse.I. FACTS
 
 
 2
 On February 2, 1989, Continental National Bank ("Continental") obtained a final judgment against Alberto Masvidal ("Debtor") in the amount of $34,670.00. On May 15, 1989, the Debtor obtained a judgment for $209,520.55 against Hamilton Bank, N.A. ("Hamilton") in Dade County Circuit Court.[1] On July 12, 1989, Ocean Bank ("Ocean") obtained a final judgment of $52,095.57 against the Debtor. Both Continental and Ocean served Hamilton with several writs of garnishment in an attempt to satisfy their respective judgments through the Hamilton judgment funds ("Funds"). No judgments were entered against Hamilton as garnishee on any of the writs.
 
 
 3
 After the Debtor filed bankruptcy on August 9, 1990, Hamilton deposited the Funds with the bankruptcy court and initiated an interpleader action. During the Chapter 7 proceedings, the Trustee filed a complaint and motion for summary judgment seeking an order declaring the validity and priority of the respective parties' interests in the Funds. The Trustee alleged that both Ocean and Continental were unsecured creditors. Ocean and Continental responded by asserting lien interests in the Funds based on their prior service of writs of garnishment.
 
 
 4
 On February 11, 1992, the bankruptcy court issued a memorandum and order granting summary judgment in favor of the Trustee. The bankruptcy court held that, pursuant to 11 U.S.C. Sec. 544, the Trustee had a superior claim enabling her to avoid any interests Continental and Ocean[2] established by virtue of their service of multiple writs of garnishment prior to the Debtor's Chapter 7 filing.
 
 
 5
 Continental and Ocean appealed the order to the District Court for the Southern District of Florida. The district court reversed the bankruptcy court because it determined that Continental and Ocean's mere service of the writs of garnishment created liens under Florida law that gave them interests superior to those of the Trustee in bankruptcy.
 
 
 6
 The Trustee and Ochoa appeal from the district court's determination and raise the following issues:
 
 
 7
 I. Whether the district court erred in holding that mere service of a writ of garnishment creates a lien under Florida law, when Florida's garnishment statute does not specifically provide for one and Florida case law does not construe the statute to provide for one?
 
 
 8
 II. Whether the district court erred in holding that mere service of a writ of garnishment creates a lien interest in the garnishor superior to that of a Trustee's lien interest under 11 U.S.C. Sec. 544, when even if a writ of garnishment did create an equitable lien in Florida, the Bankruptcy Code treats equitable liens as unperfected security interests which the trustee may set aside?
 
 
 9
 III. Whether the district court erred in its failure to hold that the Trustee's avoidance of Gulf Bank's equitable lien under 11 U.S.C. Sec. 547(b) and the automatic preservation of such lien for the benefit of the estate under 11 U.S.C. Sec. 551 gives the trustee priority over the interests of Ocean and Continental where the Bankruptcy Court determined that Gulf Bank's equitable lien was perfected under state law on April 18, 1988?
 
 
 10
 We will limit our discussion to the first issue on appeal as it is dispositive of the remaining issues.
 
 II. DISCUSSION
 
 11
 We review the findings of the district court under a de novo standard as the facts are undisputed and we need only resolve questions of law. In re Calvert, 907 F.2d 1069, 1071 (11th Cir.1990). Because the central issue in this case focuses on the nature of an interest a party secures through the service of a writ of garnishment in Florida, we will examine the substantive law of Florida to determine the effect of such service. Erie Railroad Co. v. Thompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). See also In re Clifford, 566 F.2d 1023, 1025 (5th Cir.1978) (holding that once the trustee assumes the status of a Sec. 544 hypothetical lien creditor, the court must look to state law to determine the rights and priorities of claimants in the estate.)
 
 
 12
 Florida's garnishment statute provides, in relevant part:
 
 
 13
 (1) Service of the writ shall make garnishee liable for all debts due by him to the defendant and for any tangible or intangible personal property of the defendant in his possession or control at the time of the service of the writ or at anytime between the service and the time of his answer.
 
 
 14
 Fla.Stat. Sec. 77.06(1) (1989).
 
 
 15
 Because garnishment is a statutory proceeding, "it should not be pushed in its operation beyond the statutory authority under which it is resorted to." Williams v. T.R. Sweat & Co., 103 Fla. 461, 137 So. 698, 700 (1931) (citation omitted). There is simply no language in the statute to indicate that the legislature intended for a lien to arise out of the mere service of the writ. As we find nothing in the plain language of the statute to indicate the creation of a lien, we turn to Florida case law for interpretations of the operation of the statute.[3]
 
 
 16
 The seminal case addressing this issue is Pleasant Valley Farms & Morey Condensery Co. v. Carl, 90 Fla. 420, 106 So. 427 (1925). In Pleasant Valley, the Florida Supreme Court expressly held that although a garnishment proceeding creates certain rights in favor of the plaintiff, it does not create a lien. Id., 106 So. at 429. In coming to its decision, the court compared the processes of attachment and garnishment and concluded that the difference between the two is that a lien accompanies an attachment proceeding but the garnishment process does not, in and of itself, establish a lien. Id. See also Pierce, Wulbern, Murphey Corp. v. Riverside Bank, 203 So.2d 177, 180 (Fla. 1st DCA 1967) (relying on Pleasant Valley and holding that "[t]he service of a writ of garnishment ... does not create a lien on any indebtedness owed the principal debtor.")
 
 
 17
 Three years later, in Florida East Coast Railway Co. v. Consolidated Engineering Co., 95 Fla. 99, 116 So. 19 (1928), the Florida Supreme Court addressed a similar issue. The court held that when a garnishor serves a writ of garnishment upon a garnishee and the court enters judgment on the writ against the garnishee, the lien created by the judgment on the writ dates back to the date of the initial service of the writ. Id., 116 So. at 20-21. Thus, it is the judgment entered on a writ of garnishment that creates the "lien" in favor of the garnishor. Mere service of a writ alone creates no such interest.
 
 
 18
 Rather, service of the writ begins the garnishment process which "consists of notifying a third party to retain something he has belonging to the defendant, to make disclosure to the court concerning it, and to dispose of it as the court shall direct." Thompson v. Commercial Union Insurance Co. of New York, 267 So.2d 18, 20 (Fla. 1st DCA), cert. denied, 271 So.2d 461 (Fla.1972). Because the court has a substantial role in the proceedings, no lien interest arises without entry of a judgment on the writ.[4]
 
 
 19
 "[W]hen the writ of garnishment is served, the plaintiff takes the place of the defendant and becomes substituted for him in the action against the garnishee. The effect of the garnishment is to make the garnishee the trustee of the funds of the defendant." Reaves v. Domestic Finance Co., 113 Fla. 672, 152 So. 718, 720 (1934). Through their service of the writs, Continental and Ocean are merely subrogated to the rights the Debtor has against Hamilton. See Florida Public Service Commission v. Pruitt, Humphress, Powers & Monroe Advertising Agency, Inc., 587 So.2d 561, 563 (Fla. 1st DCA 1991); Cerna v. Swiss Bank Corp., 503 So.2d 1297, 1299 (Fla. 3d DCA), rev. denied, 513 So.2d 1060 (Fla.) and 513 So.2d 1063 (Fla.1987); Coyle v. Pan American Bank of Miami, 377 So.2d 213, 216 (Fla. 3d DCA 1979); Barsco, Inc. v. H.W.W., Inc., 346 So.2d 134, 136 (Fla. 1st DCA 1977); Eger Block & Redi-Mix Co., Inc. v. Wheeler, 207 So.2d 698, 699 (Fla. 2nd DCA 1968); Seaboard Surety Co. v. Acme Wellpoint Corp., 156 So.2d 688, 690 (Fla. 2d DCA 1963).[5]
 
 
 20
 The district court concluded that service of the writ creates a lien through its reliance on the cases cited supra in note 3, In re Harrington, 70 B.R. 301 (Bankr.S.D.Fla.1987), and In re Demountable House Corp., 58 F.Supp. 955 (S.D.Fla.1945). However, in Harrington, the garnishor obtained a judgment on the writ of garnishment against the garnishee. Id. at 302. The court held that under Florida East Coast Railway, the "lien" should be retroactively dated to the day of the service of the writ thus allowing the garnishor to fall outside of the 90 day preference period. Id. at 305. Here, neither Ocean nor Continental ever obtained a judgment in garnishment against Hamilton as garnishee. Thus, no "lien" ever arose to which the court could have applied the Florida East Coast Railway rule.
 
 
 21
 Likewise, in Demountable House, the garnishor, the garnishee, and the debtor entered into a stipulated settlement during the bankruptcy proceedings. Although the state court never entered a judgment on the writ against the garnishee, the bankruptcy court determined that the settlement agreement operated to resolve the various parties' rights and under Florida East Coast Railway, the lien arising from the stipulated settlement dated back to the day of the initial service of the writ of garnishment. As a result, the garnishor established an interest prior to the preference period which the trustee could not avoid. Id. at 956. Here, the parties reached no such agreement through which any lien interest could have arisen. Again, the factual distinctions between Demountable House and the case before us merit a different result.
 
 
 22
 Accordingly, we agree that "no Florida court has ever held that a writ of garnishment is the same as execution for the purpose of creating a lien ... [and] until a Florida court rules otherwise, a judgment creditor who seeks a lien for the purpose of establishing priority in bankruptcy must deliver a writ of execution to the sheriff...." In re Armando Gerstel, Inc., 65 B.R. 602, 607 (S.D.Fla.1986).
 
 
 23
 Because neither Continental nor Ocean obtained judgments against Hamilton as garnishee, they now stand as unsecured creditors and the Funds constitute property of the estate free of any liens. Thus, the bankruptcy court was correct in granting summary judgment in favor of the Trustee because, under Secs. 544 and 547, the Trustee has a superior interest to those Continental and Ocean hold as unsecured creditors.III. CONCLUSION
 
 
 24
 For the above reasons, we REVERSE the district court's order and REMAND for entry of summary judgment in favor of the Trustee.
 
 
 25
 The Judgment is REVERSED and REMANDED.
 
 
 
 [1]
 Following a variety of motions to offset the judgment and the posting of a supersedeas bond pending appeal, the Debtor obtained a final judgment in the amount of $137,366.74. The appellate court affirmed that judgment and issued a mandate on August 9, 1990. The Debtor commenced his chapter 7 bankruptcy proceedings on the same day
 
 
 [2]
 There were several other defendant-creditors in the bankruptcy court that did not participate in the appeal to the district court. Accordingly, our discussion is limited to the parties before us in the present appeal
 
 
 [3]
 We disagree with the district court's determination that mere service of a writ creates a lien. In coming to such a conclusion, the district court relied on several federal cases that do not cite any Florida law in their analysis of the question. See In re Rettemnier, 113 B.R. 757 (Bankr.S.D.Fla.1990) (citing no Florida law in the order); In re Brogdon, 75 B.R. 79 (Bankr.M.D.Fla.1987) (same); In re M.D.F., Inc., 39 B.R. 16 (Bankr.S.D.Fla.1984) (citing no Florida law holding that service of writ creates lien)
 
 
 [4]
 We agree with the conclusion the bankruptcy court reached through its analysis of the procedures found in the garnishment statutes. Specifically, the court held:
 First of all, the effect of service according to Fla.Stat. Sec. 77.06(2) is that the garnishee shall retain any money or property in the possession or control of the garnishee, subject to disposition as provided in the chapter. If the garnishee has property of the debtor in possession, the garnishee may as an alternative to answering the writ, surrender the property to the sheriff who in turn shall receive the property and sell it under the execution against the judgment debtor. Fla.Stat. Secs. 77.082 and 77.14. Secondly, after the service of the writ and answer by the garnishee, and assuming there has been no satisfactory surrender, judgment may be rendered against the garnishee for the amount disclosed by the answer or after trial. Fla.Stat. Sec. 77.083. The judgment against the garnishee may then be enforced by means of execution and levy on any of the garnishee's property. Fla.Stat. Sec. 77.13. The existence of these two remedies, the ability to execute on the garnished property and the availability of a personal judgment against the garnishee itself suggests that the Florida legislature intended that the writ of garnishment itself creates no lien.
 R2-1-253 at 13-14 (emphasis added).
 
 
 [5]
 We note that while all of the above cases discuss the garnishment process, none contain any discussion of the existence of a lien