United States Court of Appeals,

Eleventh Circuit.

No. 94-2384.

In re Edwin Leo VANN, Debtor.

CITY BANK & TRUST CO., Plaintiff-Appellant,

v.

Edwin Leo VANN, Defendant-Appellee.

Oct. 19, 1995.

Appeal from the United States District Court for the Middle District of Florida. (No. 93-817-CIV-T-21C), L. Clure Morton, Judge., and Bankruptcy Court (No. 90-10082-8B7), Thomas E. Baynes, Jr., Judge.

Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and HENDERSON, Senior Circuit Judge.

BIRCH, Circuit Judge:

This appeal presents the first impression issue of what standard of reliance a creditor must satisfy under section 523(a)(2)(A) of the Bankruptcy Code to prevent the discharge of a debt. The bankruptcy court held that a creditor's reliance on the debtor's misrepresentations must be reasonable. The court rejected the creditor's claim that reasonable reliance was an overly stringent standard or, in the alternative, that their reliance met the reasonable reliance standard. The district court summarily affirmed; we REVERSE and REMAND for further factfinding.

I. BACKGROUND

In 1985, defendant-appellee Edwin L. Vann sought credit from City Bank for the opening of a cheese processing plant in Tennessee. Vann submitted a financial statement to plaintiff-appellant City Bank & Trust Company's ("City Bank"), and

a representative from City Bank visited Vann at his home in Florida to investigate the real estate holdings and other properties relied upon by Vann to support the extension of credit. Between the initiation of credit negotiations and the eventual closing of the loan, Vann's financial condition deteriorated. City Bank did not request updated financial information from Vann prior to the closing of the loan, and Vann did not disclose these changes despite representations in the loan documents that no changes had occurred. Vann subsequently filed bankruptcy under Chapter 11.

City Bank filed an adversary proceeding challenging the dischargeability of Vann's debt to it. City Bank charged that Vann obtained the credit by false pretenses, false representations, or actual fraud under section 523(a)(2)(A), and that it reasonably relied on Vann's financial statement, which was materially false under section 523(a)(2)(B)[1]. The bankruptcy court concluded (1)

---

[1]Section 523(a)(2) provides that an individual debtor's debt incurred

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [or]
>
> (B) use of a statement in writing—
>
> (i) that is materially false;
>
> (ii) respecting the debtor's or an insider's financial condition;
>
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit *reasonably relied;* and

that, although the bank had been "hoodwinked" by Vann, there was no actual fraud, (2) that, even if there were false pretenses or false representations under section 523(a)(2)(A), City Bank was required to show reasonable reliance on Vann's representations and it failed to meet that standard; and (3) that City Bank's reliance on Vann's materially false financial statement was unreasonable. R1-1-90-297 (Trans. of Proceedings).

Upon City Bank's motion for further findings of fact and conclusions of law as to its section 523(a)(2)(A) claim, the bankruptcy court held that City Bank's reliance must be reasonable under both section 523(a)(2)(A) and section 523(a)(2)(B). Therefore, it denied City Bank's motion and entered judgment in the adversary proceeding for Vann. The district court summarily affirmed the bankruptcy court. Because we conclude that, in contrast to section 523(a)(2)(B), section 523(a)(2)(A) does not require the creditor to show reasonable reliance on the debtor's representations, we REVERSE and REMAND.

## II. DISCUSSION

We review the bankruptcy court's construction of section 523(a)(2)(A) *de novo.* *See Haas v. Internal Revenue Service (In re Haas),* 48 F.3d 1153, 1154 (11th Cir.1995). Section 523(a)(2)(A) does not address the standard of reliance that a creditor must prove to prevent discharge of a debt incurred for an extension of credit obtained by false pretenses, false representation(s) or

---

(iv) that the debtor caused to be made or published with intent to deceive....

will not be discharged in bankruptcy. § 523(a)(2) (emphasis added).

actual fraud.  Nevertheless, the circuit courts agree that, before the bankruptcy court will withhold discharge, the creditor must show that it relied on the debtor's misstatements as a necessary element of recovery for false pretenses, for false representations or for actual fraud.  *See generally Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh),* 973 F.2d 1454, 1457 (9th Cir.1992) (per curiam);  *BancBoston Mortgage Corp. v. Ledford (In re Ledford),* 970 F.2d 1556, 1559-60 (6th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 1272, 122 L.Ed.2d 667 (1993); *Allison v. Roberts (In re Allison),* 960 F.2d 481, 484 (5th Cir.1992);  *Commerce Bank & Trust Co. v. Burgess (In re Burgess),* 955 F.2d 134, 140 (1st Cir.1992);  *Thul v. Ophaug (In re Ophaug),* 827 F.2d 340, 343 (8th Cir.1987);  *Schweig v. Hunter (In re Hunter),* 780 F.2d 1577 (11th Cir.1986);  *First Nat'l. Bank of Red Bud v. Kimzey (In re Kimzey),* 761 F.2d 421, 423 (7th Cir.1985). [2] The similarity, however, ends there.  Three standards of reliance apparently are used by the circuit courts:  (1) reasonable

---

[2]The American Law of Torts provides that

> [i]t is a fundamental principle of the law of fraud throughout the United States, regardless of the form of relief sought, that in order to secure redress, the representee (person to whom or which the misrepresentation was made) must have *relied* upon the statement or representation as an inducement to his action or injurious change of position.  As the general American law declares, a representation must have been acted upon in the manner contemplated by the party making it, or else in some manner reasonably probable.

Stuart M. Speiser, Charles F. Krause, & Alfred W. Gans, 9 American Law of Torts § 32:49 (1992).

reliance, (2) justifiable reliance, and (3) actual reliance.[3]

Although there is some debate about the exact meaning of "reasonable" reliance, *see In re Kirsh,* 973 F.2d at 1459-60, we conclude the requirement of reasonableness to be a more stringent standard than justifiable reliance or actual reliance. *But see Martin v. Bank of Germantown (In re Martin),* 761 F.2d 1163, 1166 (6th Cir.1985) (holding that the reasonableness requirement of § 523(a)(2)(B) "cannot be said to be a rigorous requirement, but rather is directed at creditors acting in bad faith"). Reasonable reliance connotes the use of the standard of ordinary and average person. *See In re Kirsh,* 973 F.2d at 1458, 1459-60. The Tenth Circuit, upon which the bankruptcy court relied, stated that

> [t]his standard of reasonableness places a measure of responsibility upon a creditor to ensure that there exists some basis for relying upon the debtor's representations. Of course, the reasonableness of a creditor's reliance will be evaluated according to the particular facts and circumstances present in a given case.

*First Bank v. Mullet (In re Mullet),* 817 F.2d 677, 679 (10th Cir.1987). The Tenth Circuit concluded that the bank's failure to investigate precluded reasonable reliance. *Id.* at 681-82.

Interpreting § 523(a)(2)(B), the Fifth Circuit held that reasonable reliance would be ascertained by asking the following questions:

> whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the

---

[3]Because of the split in the circuits, the Supreme Court has granted certiorari to a First Circuit case to answer this question. *Field v. Mans,* 1994 WL 497614, No. 94-1391, 1994 U.S.App. LEXIS 24927 (1st Cir. Aug. 29, 1994), *cert. granted,* --- U.S. ----, 115 S.Ct. 1821, 131 L.Ed.2d 743 (1995).

> representations relied upon were not accurate; and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.

*Coston v. Bank of Malvern (In re Coston),* 991 F.2d 257, 261 (5th Cir.1993) (en banc) (per curiam); *see also In re Ledford,* 970 F.2d at 1560 (using the same reliance standard for § 523(a)(2)(A) and § 523(a)(2)(B)).[4]

Justifiable reliance heretofore has been used only by the Ninth Circuit. *In re Kirsh,* 973 F.2d at 1459. Justifiable reliance represents a compromise between the rigid reasonableness standard and the lenient actual reliance standard. At the other end of the spectrum is actual reliance. Actual reliance requires that the creditor prove that he in fact relied upon the representations of the debtor. Reasonableness of the reliance may be used as proof that the creditor did rely. *In re Allison,* 960 F.2d at 485. For the reasons set forth below, we join the Ninth Circuit in adopting justifiable reliance as this circuit's standard of reliance by a creditor on the debtor's misrepresentations to prevent discharge of a debt pursuant to 11 U.S.C. § 523(a)(2)(A).[5]

---

[4]To the extent that the reasonable reliance cases use a subjective standard to determine whether or not the reliance is adequate to prevent discharge, we would categorize the cases as adhering not to a true reasonable reliance standard, but rather to a justifiable reliance standard. *See In re Kirsh,* 973 F.2d at 1459-60 ("This use of the word "reasonable' in place of "justifiable' is of no real moment unless a later reader is led away from the true content of the reliance element.").

[5]We address first the claim by Vann that we have already answered this question. Relying on *Schweig v. Hunter (In re Hunter),* 780 F.2d 1577 (11th Cir.1986), and *St. Laurent v. Ambrose (In re St. Laurent),* 991 F.2d 672 (11th Cir.1993), Vann argues that this court has expressly adopted a standard of reasonable reliance. Vann rests his argument on the following passage of *In re St. Laurent:*

## A. STATUTORY CONSTRUCTION

Although section 523(a)(2)(A) is silent with respect to the

> For purposes of § 523(a)(2)(A), a creditor must prove that (1) the debtor made a false representation with intent to deceive the creditor, (2) the creditor relied on the representation, (3) that his reliance was *reasonably founded,* and (4) that the creditor sustained loss as a result of the representation.

*Id.* at 676 (emphasis added). Indeed, we have stated that a creditor's reliance must be "reasonably founded." *See id.; In re Hunter,* 780 F.2d at 1579. Vann contends that because *In re St. Laurent* was addressing the application of collateral estoppel to section 523(a)(2)(A), our statement regarding "reasonably founded" is binding on us.

We do not view *In re St. Laurent* with the same effect. Our finding that collateral estoppel precluded the bankruptcy court from relitigating fraud was based on our conclusion that the "elements of common law fraud in Florida " "closely mirror" the requirements of section 523(a)(2)(A) and, hence, are "sufficiently identical ... to meet the first prong of the test for collateral estoppel." ' " *In re St. Laurent,* 991 F.2d at 676 (omission in original) (quoting *In re Jolly,* 124 B.R. 365, 367 (Bankr.M.D.Fla.1991)). Moreover, the Florida standard of reliance we cited in *In re St. Laurent* was *actual reliance. Id.* at 676 ("To prove fraud under Florida law, a plaintiff must establish that the defendant made a "deliberate and knowing misrepresentation designed to cause, and *actually causing* detrimental reliance by the plaintiff.' ") (quoting *First Interstate Dev. Corp. v. Ablanedo,* 511 So.2d 536, 539 (Fla.1987)). In *In re Hunter,* we concluded that there were no false representations or false pretenses, and accordingly, we never reached the issue of reliance. *In re Hunter,* 780 F.2d at 1580. We made no statement in *In re St. Laurent* or in *In re Hunter,* regarding what "reasonably founded" means, and we refuse to be bound by *dicta. See New Port Largo, Inc. v. Monroe County,* 985 F.2d 1488, 1500 n. 7 ("For good or for bad, opinion-writing judges—unlike legislators—can make cases decide no more than the cases present. For example, no matter how often or how plainly a judicial panel may put in its opinion that "we hold X,' 'X' is not law and is not binding on later panels unless "X' was squarely presented by the facts of the case and was a proposition that absolutely must have been decided to decide the concrete case then before the court.") (Edmondson, J., concurring), *cert. denied,* --- U.S. ----, 114 S.Ct. 439, 126 L.Ed.2d 373 (1993). Hence, we now address for the first time directly what standard of reliance is required under section 523(a)(2)(A).

standard of reliance, its companion section 523(a)(2)(B) is not. Subsection (B) states prominently that the creditor's reliance on the debtor's statement must have been *reasonable.* We thus begin with the basic premise of statutory construction that " " "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." ' " *Rodriguez v. United States,* 480 U.S. 522, 525, 107 S.Ct. 1391, 1393, 94 L.Ed.2d 533 (1987) (per curiam) (quoting *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983)); *accord In re Haas,* 48 F.3d at 1156-57; *United States v. Jordan,* 915 F.2d 622, 628 (11th Cir.1990), *cert. denied,* 499 U.S. 979, 111 S.Ct. 1629, 113 L.Ed.2d 725 (1991). Vann has pointed to no authority supporting the concept that Congress specifically intended for a reasonable reliance standard to apply. Thus, we can deduce from the exclusion of the reasonable reliance standard in the section immediately preceding section 523(a)(2)(B) only that some other standard than reasonable was intended by the legislature. *Cf. In re Ophaug,* 827 F.2d at 343 (relying on the purpose behind subsection (B) to conclude "having no reason to think that Congress meant anything other than what it said, we can only conclude that section 523(a)(2)(A) does not require a creditor to prove that his reliance on the debtor's fraudulent misrepresentations was reasonable").

B. LEGISLATIVE HISTORY

Because Congress failed to provide the standard of reliance in section 523(a)(2)(A), we look to the legislative history of that

section to determine whether Congress's intent can be ascertained there. Sections 523(a)(2) of the 1978 Bankruptcy Code embodied the revision of Bankruptcy Act section 17(2). Although there is little information concerning the passage of section 523(a)(2)(A), specifically, it is clear that the Congress intended the reasonable reliance standard only for a nondischargeability claim made pursuant to section 523(a)(2)(B). The House of Representatives Report on the Bankruptcy Code of 1978 contained a lengthy statement regarding the use of false financial statements to obtain money, property, services, or credit. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 129-32 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6090-93. Section 523(a)(2)(B) specifically was enacted to protect consumers against "abuse in *consumer* cases," and to guard "the fresh start goal of the bankruptcy discharge." *Id.* at 130, 1978 U.S.C.C.A.N. at 6091 (emphasis added). The report, where discussing the effect of false financial statements, states in pertinent part: "[t]he difference[ ] [is] that current law ... requires only reliance, not reasonable reliance, by the creditor on the statement. The courts have recently begun to require that the reliance be reasonable, however." *Id.* Nowhere in the report is a reference made to a requirement of reasonable reliance to prevent discharge on the basis of unwritten false statements.[6] Thus, our

---

[6]In fact, the statements of one Representative, 124 Cong.Rec. 11,089 (1978) (statement of Rep. Edwards), *reprinted in* 1978 U.S.C.C.A.N. 6436, 6453, and one Senator, 124 Cong.Rec. 17,406 (1978) (statement of Sen. DeConcini), *reprinted in* 1978 U.S.C.C.A.N. 6505, 6522 emphasize that sections 523(a)(2)(A) and 523(a)(2)(B) are *mutually exclusive* in their purposes, supporting the construction that reasonable reliance cannot be read into section 523(a)(2)(A).

conclusion that only section 523(a)(2)(B) requires reasonable reliance is fortified.

C. COMMON LAW

Because neither the statute nor the legislative history indicates whether a creditor must demonstrate actual reliance[7] or justifiable reliance to prevent discharge according to section 523(a)(2)(A), we turn to the common law. *See In re Kirsh,* 973 F.2d at 1457-58; *Cf. Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 106-108, 111 S.Ct. 2166, 2169, 115 L.Ed.2d 96 (1991) ("Congress is understood to legislate against a background of common-law adjudicatory principles."); *Briscoe v. LaHue,* 460 U.S. 325, 330-34, 103 S.Ct. 1108, 1113-15, 75 L.Ed.2d 96 (1983) (concluding that witness immunity was " "so well grounded in history and reason' that we cannot believe that Congress impinged on it "by covert inclusion in the general language before us' " (quoting *Tenney v. Brandhove,* 341 U.S. 367, 376, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951))); *United States v. Turley,* 352 U.S. 407, 411, 77 S.Ct. 397, 399, 1 L.Ed.2d 430 (1957) ("We recognize that where a federal criminal statute uses a common-law term of established meaning without otherwise defining it, the general practice is to give that term its common-law meaning."). The Restatement (Second) of Torts provides the common law rule in these cases:

> The recipient of a fraudulent misrepresentation can recover against its maker for pecuniary loss resulting from it if, but

---

[7]The statement in House Report No. 595 that "current law ... requires only reliance" pertains to § 523(a)(2)(B), and thus, the statement does not reveal congressional intent regarding § 523(a)(2)(A).

only if,

> (a) he *relies* on the misrepresentation in acting or refraining from action, and

> (b) his reliance is *justifiable.*

Restatement (Second) of Torts § 537 (1977) (emphasis added).

Another generally recognized authority, *Prosser & Keeton on Torts* states that "[n]ot only must there be reliance but the reliance must be *justifiable* under the circumstances." W. Page Keeton, *Prosser & Keeton on Torts* § 108, at 749 (5th ed. 1984). The justifiability requirement provides "some objective corroboration to plaintiff's claim that he did rely." *Id.* at 750.

To constitute justifiable reliance, "[t]he plaintiff's conduct must not be so utterly unreasonable, in the light of the information apparent to him, that the law may properly say that his loss is his own responsibility." *Id.* This conclusion, however, does not mean that the reliance must be objectively reasonable. "Although the plaintiff's reliance on the misrepresentation must be justifiable, ... this does not mean that his conduct must conform to the standard of the reasonable man." Restatement (Second) of Torts § 545A cmt. b. Justifiable reliance is gauged by "an *individual standard* of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case." *Prosser & Keeton on Torts* at 751 (emphasis added). Additionally,

> [i]t is only where, under the circumstances, the facts should be apparent to one of [plaintiff's] knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own.

*Id.* at 752 (footnotes omitted); *see also Mayer v. Spanel Int'l Ltd. (In re Mayer),* 51 F.3d 670, 676 (7th Cir.1995) ("A victim who lacks access to the truth, and has not been alerted to the facts that would alert him to the truth, is not to be ... blocked by a discharge under the bankruptcy laws—just because he did not conduct a more thorough investigation."). Under the common law, a person was not barred from recovery because he failed to undertake an investigation of the truth of a misrepresentation even where "the reasonable man of ordinary caution would do so." Restatement (Second) of Torts § 545A cmt. b. This subjective construction is consistent with the Supreme Court's interpretation of the statutory purpose. *See Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 659, 12 L.Ed.2d 755 (1991) ("We think it unlikely that Congress ... would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud."). Thus, we adopt the standard of justifiable reliance.

The bankruptcy court embraced the reasonable reliance standard as stated by the Tenth Circuit and concluded that the bank would have been "better served by demanding an appraisal," of certain property and should have made other inquiries of the debtor to ascertain the status of other properties. R1-1-90-292. The court found that because the bank failed to do so, it was not entitled to discharge on the basis of either section 523(a)(2)(A) or section 523(a)(2)(B). Although the bankruptcy court, with hindsight, can see plainly that the bank would have been "better served by demanding an appraisal" and by making further inquiries of the debtor, even the cases upon which the court relied admonish

that the court should not " "second guess a creditor's decision to make a loan' " or " "base its decision regarding discharge on whether *it* would have extended the loan.' " *In re Mullet,* 817 F.2d at 681 (quoting *Northern Trust Co. v. Garman (In re Garman),* 643 F.2d 1252, 1258 (7th Cir.1980) (interpreting section 17(2) of the Bankruptcy Act), *cert. denied,* 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981)).

By adopting the standard of justifiable reliance, we necessarily reject the standard of actual reliance employed by the Eighth Circuit in *In re Ophaug* and the Fifth Circuit *In re Allison.* It cannot be argued that a standard of actual reliance is supported by the plain language of the statute. Section 523(a)(2)(A) does not mention reliance in any form and, to the extent that reliance is required, it is as an element of actual fraud, false pretenses or false representations that must be proven to prevent discharge of the debt. Moreover, a standard of actual reliance does not "reflect a fair balance between the[ ] conflicting interests" of discouraging fraud and of providing the honest but unfortunate debtor a fresh start that are present in the dischargeability provisions. *Grogan,* 498 U.S. at 287, 111 S.Ct. at 659. A standard of actual reliance requires little of the creditor; whereas, justifiable reliance requires the creditor to act appropriately according to his individual circumstances. Therefore, the fresh start policy of the Bankruptcy Code is intact while fraudulent debtors are precluded from profiting from their misdeeds.

D. APPLICATION OF JUSTIFIABLE RELIANCE STANDARD

With respect to section 523(a)(2)(A), the bankruptcy court

found that, although Vann "hoodwinked" City Bank, there was no actual fraud in Vann's obtaining the loan from City Bank. R1-1-90-297. The bankruptcy court, however, refused to make any additional factfinding to assist our review. If Vann obtained the loan from City Bank by false pretenses or by a false representation, and if City Bank justifiably relied on his misrepresentations, then Vann is not entitled to discharge of that debt. City Bank is not required to prove that it reasonably relied on Vann's misrepresentations.

## III. CONCLUSION

This appeal required us to decide the standard of reliance that a creditor must satisfy under section 523(a)(2)(A) of the Bankruptcy Code to prevent discharge of a debt. We have determined that standard to be justifiable reliance. Because the bankruptcy court did not make sufficient factfindings for our review, we REVERSE and REMAND to the district court with instructions to remand to the bankruptcy court for proceedings consistent with this opinion.