**In re Neil Anthony SAINT JOHN, Debtor.**

**Kenneth Renick, Esq., Plaintiff,**

**v.**

**Neil Anthony Saint John, Defendant.**

**Bankruptcy No. 98–36211–BKC–SHF.**
**Adversary No. 99–3049–BKC–SHF–A.**

United States Bankruptcy Court,
S.D. Florida,
West Palm Beach Division.

Aug. 25, 1999.

Charles I. Cohen, Boca Raton, FL.

Michael Bakst, Palm Beach, FL.

## MEMORANDUM OPINION

STEVEN H. FRIEDMAN, Bankruptcy Judge.

THIS CAUSE came to be heard at trial on July 14, 1999, on Plaintiff's Complaint Objecting to Dischargeability of Debt. Plaintiff seeks to deny the dischargeability of an obligation due by the Defendant in the amount of $9,563.40, pursuant to 11 U.S.C. § 523(a)(2)(A). The indebtedness represents attorney's fees and costs due Plaintiff by Defendant incurred in the course of Plaintiff's rendering of legal services in representing the Defendant in his state court divorce proceeding. The Court, having carefully considered the evidence and argument presented at trial, finds that the obligation owed by Defendant is fully dischargeable.

In May 1997, Defendant contacted Plaintiff for the purpose of obtaining legal representation in the Defendant's divorce proceeding pending in the Palm Beach County Circuit Court. Commencing in May 1997, and continuing for a period of approximately one and one-half years, Plaintiff represented Defendant in the hotly contested divorce proceeding. During the course of Plaintiff's representation, Defendant incurred attorney's fees exceeding $21,000.00, together with expenses exceeding $2,800.00. The unpaid portion of attorney's fees and expenses equals $9,563.40.

At the outset of Plaintiff's legal representation of Defendant, Plaintiff recog-

nized that Defendant was an individual of modest means, whose employment status was uncertain. From May, 1997, when Defendant initially retained Plaintiff, through May, 1998, Defendant was employed as a commissioned salesman by Artec Systems ("Artec"), a computer software manufacturer. As of May 1997, Defendant was earning approximately $2,000 per month. From May 1997 through October 1998 (immediately prior to Defendant's state court divorce trial), Defendant remained current in payment of Plaintiff's periodic billings, but only with financial assistance from his relatives. Defendant's relatives advanced fees to Plaintiff to the following extent:

| | |
|---|---|
| George St. John (debtor's father) | — $3,000.00 |
| Raymond J. Lauring (debtor's uncle) | — $4,000.00 |
| John N. Saint (relationship not established) | — $8,000.00 |
| Michael St. John (debtor's brother) | — $2,000.00 |

In addition to the foregoing, Defendant paid attorney's fees to Plaintiff directly in the amount of $5,000. All of the above-referenced payments were issued between May 6, 1997 and October 13, 1998. With the above-described payments to Plaintiff, Defendant had become current on his obligation to Plaintiff as of October 15, 1998, just prior to the commencement of the divorce trial set for October 19–20, 1998.

The key factual and legal issues raised by the instant dispute derive from discussions between Plaintiff and Defendant occurring immediately prior to the commencement of the divorce trial. Plaintiff alleges that he advised Defendant, immediately prior to the state court divorce trial, that he needed a substantial retainer in order to proceed with his representation of Defendant at trial. In response, Defendant allegedly assured Plaintiff that full payment of the attorney's fees would be paid. More specifically, Plaintiff contends that Defendant assured him that he would ask his family members for additional funds to pay Plaintiff's attorney's fees. Plaintiff contends that Defendant's alleged assurances that he would seek advances from relatives to pay Plaintiff's additional attorney's fees were false when made by Defendant, and that Defendant had no intention of asking his relatives for further advances. Plaintiff further alleges that Defendant did not make such requests of his relatives, thereby warranting a determination that the unpaid attorney's fees are non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

Plaintiff argues that his contentions as to the false representations by Defendant are corroborated by Defendant's action of consulting with bankruptcy counsel during the pendency of the divorce proceeding. Defendant acknowledges that approximately two—three weeks prior to the October 19, 1998 divorce trial, Defendant conferred with his bankruptcy counsel. This act purportedly establishes that Defendant had neither the intention nor the ability to pay Plaintiff's attorney's fees immediately prior to the commencement of the trial, when Defendant allegedly assured Plaintiff that the additional fees would be paid. Plaintiff thus contends that, had Defendant made Plaintiff aware of the prospective bankruptcy filing, Plaintiff would not have continued with his representation of Defendant and would not have been willing to advance expenses, and continue to provide legal services, on behalf of Defendant.

In order for a bankruptcy court to determine that a particular debt is non-dischargeable because of a debtor's false representation, a creditor must prove the following elements:

> the debtor made a false statement with the purpose and intention of deceiving the creditor; the creditor relied on such false statement; the creditor's reliance on the false statement was justifiably founded; and the creditor sustained damage as a result of the false statement.

*In re Johannessen,* 76 F.3d 347, 350 (11th Cir.1996). A creditor has the burden of proving each element of Section

523(a)(2)(A) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Plaintiff has failed to meet his burden as to two of these elements. First, Plaintiff has failed to prove that Defendant made a false statement with the purpose and intention of deceiving Plaintiff. Second, Plaintiff has failed to prove that he justifiably relied on Defendant's statement.

 Upon completion of an unsuccessful mediation conference on Friday, October 15, 1998, Plaintiff allegedly told Defendant that it would cost $10,000 to proceed with the trial scheduled to begin on Monday, October 18, 1998. Defendant allegedly assured Plaintiff that he would borrow the money from his relatives to pay the Plaintiff's fees. Plaintiff contends that this representation was false when made, and points to the fact that Defendant consulted bankruptcy counsel during the pendency of the divorce proceeding. The Court finds little correlation between the consultation of bankruptcy counsel and the assurance by Plaintiff that he would seek a loan from his relatives. At the point that the assurance was made, the Court finds that Defendant did not make such assurance with the intent to deceive.

 Defendant contends that Plaintiff did not justifiably rely on Defendant's representation. The standard of justifiable reliance requires the creditor to act appropriately according to his individual circumstances. *In re Vann*, 67 F.3d 277, 284 (11th Cir.1995). This standard leaves the "fresh start policy of the Bankruptcy Code intact while fraudulent debtors are precluded from profiting from their misdeeds." *Id.* Focusing on the circumstances as they existed at the time that Defendant assured Plaintiff relating to the $10,000, the Court finds that Plaintiff was not justified in relying on Defendants representation. During the course of their relationship, Plaintiff received $24,000 in fees from Defendant and/or his relatives. Further, on September 28, 1998, Defendant's uncle, Raymond Lauring, paid Plaintiff $4,000 to be applied against the attorney's fees and expenses incurred by Plaintiff. On October 13th, George St. John, the Defendant's father, paid Plaintiff $3,000 to be applied against the attorney's fees and expenses incurred by Plaintiff. Thus, as of October 15, 1998, and immediately prior to the October 18th commencement of the two-day divorce trial, Plaintiff was holding a credit balance equal to $3,235.62. Although Plaintiff contends that he advised Defendant of his unwillingness to proceed to trial without an additional $10,000 retainer, and asserts that he continued with his representation of Defendant through trial solely based upon Defendant's assurances of his ability to raise additional funds from his family members, the Court rejects Plaintiff's contention. Plaintiff had received payments in excess of $20,000 for attorney's fees together with reimbursement of all expenses as of October 15, 1998. Plaintiff knew, throughout the course of his representation of Defendant, that Plaintiff was required to rely upon the generosity of his relatives to defray Plaintiff's legal bills. The Court does not find as credible Plaintiff's contention that, but for Defendant's assurances as to the willingness of his relatives to defray future fees and expenses, Plaintiff would have withdrawn in his representation of Defendant through trial. On the eve of the divorce trial, Plaintiff held a credit balance of over $3,200 as to Defendant's account. Throughout the course of the litigation, Defendant always had been able to raise sufficient funds to pay Plaintiff's bills. Notwithstanding the specter of a bankruptcy filing, this Court finds that there was no reliance by Plaintiff upon Defendant's assurance of future payments on the eve of trial. The Court further finds that any representation by Defendant that he would request future financial assistance from his relatives was not false, as Defendant previously demonstrated an ability to raise the funds necessary to pay the fees and expenses due Plaintiff.

Defendant has sought an award of attorneys' fees from Plaintiff under 11 U.S.C. § 523(d), on the basis that the position asserted by Plaintiff was not substantially justified. The Court finds that an award of attorney's fees in favor of Defendant under the referenced provision is not warranted.

Contemporaneously, this Court shall enter a final judgement in accordance with Bankruptcy Rule 9021 determining that the $9,563.40 obligation due Plaintiff by Defendant is dischargeable.