[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13620
Non-Argument Calendar

_____

D.C. Docket No. 9:13-cv-80243-KMM,
Bkcy No. 11-02334-EPK

In Re: DENISE ROBERTS-DUDE,

                                                    Debtor.

_____

STEWART TITLE GUARANTY COMPANY,

                                                    Plaintiff - Appellee,

versus

DENISE ROBERTS-DUDE,

                                                    Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 11, 2015)

Before MARCUS, WILLIAM PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Debtor-Defendant-Appellant Denise Roberts-Dude ("Roberts") appeals from the district court's order reversing and remanding the bankruptcy court's judgment in an adversary bankruptcy proceeding initiated by Plaintiff-Appellee Stewart Title Guaranty Company, a title insurance company. The appeal stems from a real estate scheme involving Roberts, her husband Harald Dude, and their real estate agent David Lester, who worked together to sell certain property in Aspen, Colorado without disclosing that Washington Mutual Bank ("WAMU") held a $1,900,000 deed of trust on the property. In connection with the sale, Stewart Title performed a title search on the property prior to closing, but failed to discover the undisclosed encumbrance and issued title insurance policies on the property. Several months later, WAMU informed the new owner of the Aspen property about the WAMU deed of trust, and Stewart Title was obligated to pay WAMU $1,950,000. Stewart Title filed a civil suit against Roberts and her conspirators for falsely stating in affidavits -- upon which Stewart Title relied prior to issuing title insurance on the property -- that there were no loans, unpaid judgments, or liens on the property, even though Roberts, Dude and others had been personally aware of the WAMU deed of trust. Just prior to trial, Roberts declared bankruptcy.

Stewart Title subsequently filed an adversary proceeding against Roberts in bankruptcy court, with a five-count complaint seeking allowance of claims based on fraud, concealment, breach of contract, and unjust enrichment, and for an

2

exception from discharge of bankruptcy. Following proceedings in bankruptcy court and district court, Roberts was held liable to Stewart Title for both fraud and concealment, among other things. On appeal, Roberts argues that the district court erred in concluding that Stewart Title had justifiably relied on Roberts's misrepresentations about the Aspen property. After thorough review, we affirm.[1]

As the "second court of review of a bankruptcy court's judgment," we examine independently the determinations of the bankruptcy court and employ the same standards of review as the district court. In re Issac Leaseco, Inc., 389 F.3d 1205, 1209 (11th Cir. 2004) (quotation omitted). Thus, we review the factual findings of the bankruptcy court for clear error, In re Calvert, 907 F.2d 1069, 1071 (11th Cir. 1990), and review de novo legal questions concerning the issue of justifiable reliance, In re Masvidal, 10 F.3d 761, 762 (11th Cir. 1993).

Section 523 of the Bankruptcy Code outlines the exceptions to discharge in bankruptcy. See generally 11 U.S.C. § 523. Because "the opportunity for a completely unencumbered new beginning" is limited to the honest debtor, Grogan v. Garner, 498 U.S. 279, 286–87 (1991)), section 523(a)(2)(A) excludes from discharge debts obtained through "false pretenses, a false representation, or actual fraud," 11 U.S.C. § 523(a)(2)(A). Indeed, "the fraud exceptions to discharge exist to punish the debtor for committing fraud." In re St. Laurent, 991 F.2d 672, 680

---

[1] We also DENY AS MOOT Stewart Title's motion for limited remand.

3

(11th Cir. 1993). Courts interpreting § 523(a)(2)(A) require a plaintiff to prove the traditional elements of common law fraud. In re Bilzerian, 153 F.3d 1278, 1281 (11th Cir. 1998) (per curiam). Therefore, the elements of a claim under § 523(a)(2)(A) are: (1) the debtor made a false representation with the intention of deceiving the creditor; (2) the creditor relied on the false representation; (3) the reliance was justified; and (4) the creditor sustained a loss as a result of the false representation. Id.

There is only one element disputed in this appeal -- whether Stewart Title's reliance on Roberts's misrepresentation was justified. To constitute justifiable reliance, "[t]he plaintiff's conduct must not be so utterly unreasonable, in the light of the information apparent to him, that the law may properly say that his loss is his own responsibility." In re Vann, 67 F.3d 277, 283 (11th Cir. 1995) (quotation omitted). Thus, "[a]lthough the plaintiff's reliance on the misrepresentation must be justifiable, . . . this does not mean that his conduct must conform to the standard of the reasonable man." Id. (quotation omitted) (second alteration in original). Justifiable reliance is gauged by "an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case." Id. (quotation omitted). As the Supreme Court has explained, when "a seller of land . . . says it is free of encumbrances," then "a buyer's reliance on this factual

4

representation is justifiable, even if he could have walk[ed] across the street to the office of the register of deeds in the courthouse and easily have learned of an unsatisfied mortgage." Field v. Mans, 516 U.S. 59, 70 (1995) (quotation omitted) (second alteration in original). The Supreme Court has elaborated that "only where, under the circumstances, the facts should be apparent to one of [plaintiff's] knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived" is the plaintiff "required to make an investigation of his own." Id. at 71 (quotation omitted; emphasis added). To put it another way, reliance is not justified "only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses. Thus a defect that any experienced horseman would at once recognize at first glance may not be patent to a person who has had no experience with horses." Id. (quotation omitted; emphases added).

The following facts are undisputed here. Before issuing title insurance on the Aspen property, Stewart Title, through its agent, performed three date down searches in order to find any unknown liens or encumbrances. The three searches were: (a) a search using the legal description of the property; (b) a grantor search using the name of the record owner listed on the title commitment, Dee Investments; and (c) a search using the name of the proposed security interest grantee, Wells Fargo. Nevertheless, Stewart Title's agent failed to find the

WAMU deed of trust. It is also undisputed that the WAMU deed of trust was improperly recorded without a legal description of the property, and that Dude -- not the owner named on the title commitment, Dee Investments -- was the grantor of the WAMU deed of trust. Finally, it is undisputed that Roberts's completed affidavit upon which Stewart Title relied falsely responded "none" where she should have listed the WAMU deed of trust as an encumbrance on the property.

In a related action, the Tenth Circuit recently addressed nearly identical fraud claims and justifiable reliance issues as those before us, in Stewart Title Guar. Co. v. Dude, 708 F.3d 1191 (10th Cir. 2013). In that case, which preceded this one, Stewart Title sued Roberts, her husband Dude and his company Dee Investments, and several others, for making misrepresentations about the Aspen property. However, the trial there proceeded only against Dude and Dee Investments, because Roberts and the remaining defendants had settled or sought shelter in bankruptcy. See id. at 1193. That jury found Dude and his company liable for, among other things, fraudulent misrepresentation under Colorado law. Id. On appeal, Dude argued "that Stewart Title 'constructively' knew of [Dude's] fraud because the Washington Mutual loan was publicly recorded. All Stewart Title had to do . . . [was] visit the county clerk's office to find it. The company's failure to do so . . . render[ed] its reliance on [Dude] unjustifiable." Id. at 1195. The Tenth Circuit disagreed. It concluded that "Stewart Title did look for recorded

6

loans and liens on the property and failed to find the [WAMU] loan only because the deed was defectively recorded." Id. The Tenth Circuit then affirmed the district court's decision finding that Stewart Title should win on its fraudulent misrepresentation claim. Id. at 1196.

In the instant case, however, the bankruptcy court reached the opposite conclusion -- that Stewart Title did not justifiably rely on misrepresentations by Roberts. The court deemed Stewart Title's conduct to be:

> more than negligence. In light of the Plaintiff's relevant skill, knowledge, and experience, the level of title review that would have revealed the deed of trust was the slightest inspection, a cursory glance. It is not that the Plaintiff did not look. Here the Plaintiff looked but did not see. The Plaintiff cannot now complain that its injury was brought about by the Defendant's misrepresentation.

In re Roberts-Dude, 484 B.R. 891, 899 (Bankr. S.D. Fla. 2012), rev'd sub nom. Stewart Title Guar. Co. v. Roberts-Dude, 497 B.R. 143 (S.D. Fla. 2013). But, on appeal, the district court reversed the bankruptcy court, determining that "more than a cursory glance would be needed to determine whether Stewart Title was being deceived" from the agent's title record search, since "Stewart Title would have needed to take several steps and make various logical deductions to realize that Defendant may have lied in her Affidavit." Stewart Title, 497 B.R. at 153. The district court concluded that "Stewart Title should not be required to untangle the web of deception to uncover fraud when it was apparent on the face of the transaction that it was business as usual. Therefore, the undisputed facts on the

7

record demonstrate that Stewart Title satisfied the justifiable reliance element" of a § 523(a)(2)(A) claim. Id. at 154–55.

The record before us plainly supports the conclusion that Stewart Title satisfied the justifiable reliance element of a fraud claim under § 523(a)(2)(A). As we have detailed, Stewart Title performed three date down searches on the property, but did not find the WAMU deed of trust, which was improperly recorded without a legal description of the property and which listed Dude, not the owner named on the title commitment, Dee Investments, as the grantor. We cannot say that Stewart Title's conduct was "so utterly unreasonable, in the light of the information apparent to [it], that the law may properly say that [its] loss [was its] own responsibility." In re Vann, 67 F.3d at 283 (quotation omitted). To the extent the bankruptcy court relied heavily on Stewart Title's "experience" in performing title searches to render its conduct "utterly unreasonable," that reliance is misplaced under our law. As the Supreme Court has made clear, even a plaintiff with experience need only have taken a "cursory glance" or a "first glance" by "use of his senses." Field, 516 U.S. at 71. There can be no debate that Stewart Title's agent did just that in this case. What's more, even if Stewart Title should have performed a more thorough title search, mere negligence is insufficient to protect the fraudulent defendant. See Grogan, 498 U.S. at 287 ("We think it unlikely that Congress . . . would have favored the interest in giving perpetrators of fraud a fresh

8

start over the interest in protecting victims of fraud."). Indeed, the Supreme Court has expressly said that "contributory negligence is no bar to recovery because fraudulent misrepresentation is an intentional tort." Field, 516 U.S. at 70.

Finally, to the extent the bankruptcy court made a factual finding that Stewart Title only needed a "cursory glance" to uncover Roberts's deception, it clearly erred in making this finding. Put simply, this is not a case in which the title searcher ran a search for liens against the property's legal description, then saw and brazenly disregarded an undisclosed lien. Instead, the chain of title in the county's records showed only a transfer into and out of Dude's name. To get from those facts to the conclusion that there was a hidden lien, Stewart Title's agent would have had to: (1) note that transfers in and out of Dude's name were close together in time; (2) recognize that the transfers in and out of Dude's name occurred during the period between the issuance of the title commitment and the closing, so would not have been part of Stewart Title's earlier search; (3) understand that because the transfers were close together in time, they may have occurred for the purpose of putting a new lien against the property; (4) realize that if a new lien was the purpose for the transfer, then the grantee for the new deed of trust would have been the transferee (Dude) rather than the current record owner (Dee Investments); (5) assume that, contrary to the recording statute's requirements, a lien recorded while the property was in Dude's name might have

9

been recorded without a legal description and therefore not have shown up in his legal description search; (6) search under Dude's name as grantor for liens; (7) retrieve the lien filed in Dude's name from the clerk and recorder's records; (8) review the lien to determine whether it contained a description of the property other than a legal description, such as the street address; (9) investigate whether the street address on the WAMU deed of trust matched the address on the property he searched for, despite the lack of legal description; and, finally, (10) discount the affidavits Roberts and others had just signed to the contrary. On this record, we do not see how those steps could constitute a "cursory glance," and therefore are left with the "definite and firm conviction" that the bankruptcy court clearly erred in finding to the contrary. See United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948) ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."). Accordingly, we affirm the district court's conclusion that Stewart Title justifiably relied on Roberts's misrepresentations in issuing title insurance on the Aspen property.

**AFFIRMED.**