**PEGASUS HELICOPTERS, INC.,**
**a Colorado corporation,**
**Plaintiff–Appellee,**

v.

**UNITED TECHNOLOGIES CORPORA-**
**TION, a Delaware corporation; Hamil-**
**ton Standard, Defendants–Appellants.**

**No. 93–1199.**

United States Court of Appeals,
Tenth Circuit.

Sept. 13, 1994.

Jonathan I. Blackman of Cleary, Gottlieb, Steen & Hamilton, New York City (Chaya F. Weinberg–Brodt of Cleary, Gottlieb, Steen & Hamilton, New York City, and Michael L. Poindexter of Byrne, Kiely & White, Denver, CO, with him on the briefs), for defendants-appellants.

W. Dan Mahoney of Quiat, Schlueter, Mahoney, Ross & Barber, P.C., Denver, CO, for plaintiff-appellee.

Before KELLY and McKAY, Circuit Judges, and ROSZKOWSKI,* Senior District Judge.

McKAY, Circuit Judge.

In this diversity case in which the parties agree the law of Colorado is applicable, Defendant–Appellant United Technologies Corporation and its subsidiary, Hamilton Standard (collectively, "Hamilton"), appeal from the district court's Amended Judgment of February 4, 1993, and from the Order of that court dated April 2, 1993, denying Hamilton's motion for judgment as a matter of law.

This case arises out of Hamilton's manufacture and refurbishment of helicopter fuel controls for a helicopter engine manufactured by the Textron Lycoming Division of Avco Corporation ("Lycoming"). Plaintiff–Appellee Pegasus Helicopters, Inc., provides helicopter services for heavy lifting in contracts involving, *inter alia*, building ski lifts, logging, and installing air conditioning units in commercial buildings. These operations often require helicopters to perform at high altitude and in hot weather. To perform its contracts, Pegasus operated a Bell 214B helicopter that utilized the Lycoming engine incorporating the Hamilton fuel control. The helicopter was manufactured in 1978 and purchased third-hand by Pegasus in 1985.

Until 1989, Pegasus was apparently satisfied with the performance of the Bell helicopter. In February of that year, the fuel control unit in Pegasus' helicopter was scheduled for overhaul in accordance with manufacturer's specifications. The fuel control unit was removed and sent to Pratt and Whitney in the Netherlands for overhaul.[1] To enable Pegasus to continue operations while the fuel control unit was overhauled, Pegasus leased from Lycoming a replacement fuel control unit that had been repaired and overhauled by Hamilton under its contract with Lycoming.[2] Pegasus was unable to obtain the reliability and performance it needed in its high-altitude heavy-lifting operations from the helicopter after installing the leased fuel control unit. Pegasus repeatedly obtained replacement refurbished fuel control units from Lycoming, but was unable to obtain the needed performance. When Pegasus received the refurbished fuel control unit it had sent for overhaul to Pratt and Whitney in the Netherlands, the helicopter still failed to provide the required performance.

In 1990, Pegasus sold the helicopter in question to North American Helicopters. Pegasus then sued Lycoming, United Technologies Corporation, and its subsidiary,

---

* Honorable Stanley J. Roszkowski, Senior United States District Judge, United States District Court for the Northern District of Illinois, sitting by designation.

1. Pratt and Whitney, Netherlands, is an independent corporate subsidiary of United Technologies Corp. and is authorized to perform the overhaul of fuel control units manufactured by Hamilton.

2. Hamilton stopped making the fuel controls in question in 1981. However, Hamilton continued to repair and overhaul the fuel controls for Lycoming.

Hamilton Standard, seeking to recover for economic losses allegedly suffered as a result of the failure of its helicopter to perform as needed, which Pegasus blamed on the allegedly faulty fuel controls. Pursuant to the recommendation of the magistrate judge, the district court granted Lycoming's motion for summary judgment on all counts, and dismissed Pegasus' complaints against Lycoming on the ground that a sale is an essential element to impose liability for breach of warranty whereas Lycoming was merely a lessor of the fuel control units. The district court also granted summary judgment in favor of Hamilton on Pegasus' claims for negligence, negligent misrepresentation, and exemplary damages. The district court denied Hamilton's motion for summary judgment on Pegasus' warranty claims. Hamilton does not appeal the district court's denial of its motion for summary judgment on the warranty claims.

Pegasus' warranty claims were tried to a jury, and at the close of Plaintiff's case, Hamilton moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a)(1), arguing that there was no evidence that the fuel controls were in breach of an express warranty or that there was any implied warranty of fitness for a particular purpose. Hamilton did not move for judgment as a matter of law on the issue of whether the fuel controls were in breach of the implied warranty of merchantability. (Appellant's App. Vol. I at A548-49). The district court denied Hamilton's motion and Hamilton proceeded with its case, at the close of which Hamilton renewed its motion for judgment as a matter of law on all of Pegasus' claims.[3] The district court again denied Hamilton's motion, and the matter was submitted to the jury. On February 4, 1993, the jury returned its verdict in favor of Pegasus on the claims of breach of express warranty and implied warranty of merchantability. The district court entered judgment on the verdict and ordered Hamilton to pay the amount of $412,000. The district court also ordered that prejudgment interest should accrue from February 21, 1989, through the date of entry of judgment at the rate of 8 percent compounded annually, and

that post-judgment interest should accrue at the rate of 3.67 percent from the date of entry of judgment.

After the jury returned its verdict, Hamilton timely moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), or in the alternative, for a new trial pursuant to Rule 59(e). On April 2, 1993, the district court denied both of these motions. The district court found that Pegasus had presented sufficient evidence to support the jury verdicts. (Appellant's App. Vol. I at A121-A124.) From the district court's April 2, 1993 Order, Hamilton appeals. Hamilton argues that Pegasus failed to sustain its burden of proof on its claim for breach of an express warranty, that Pegasus failed to establish a breach of the implied warranty of merchantability, and that the district court improperly calculated prejudgment interest.

## I. Sufficiency of the Evidence

 Although this diversity case is governed by the substantive law of Colorado, the sufficiency of the evidence for purposes of granting judgment as a matter of law is governed by federal law. *Orth v. Emerson Elec. Co.*, 980 F.2d 632, 635 (10th Cir.1992); *Hurd v. American Hoist & Derrick Co.*, 734 F.2d 495, 498 (10th Cir.1984). We therefore review *de novo* the district court's order denying Hamilton's motion for judgment as a matter of law. *Board of County Comm'rs v. Liberty Group*, 965 F.2d 879, 884 (10th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 329, 121 L.Ed.2d 247 (1992). The same standard is applied whether the motion is made before or after the verdict is returned. *Hurd*, 734 F.2d at 498. " '[W]e may find error [in the denial of such a motion] only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party [opposing the motion]; we must construe the evidence and inferences most favorably to the nonmoving party.' " *Ralston Dev. Corp. v. United States*, 937 F.2d 510, 512 (10th Cir.1991) (quoting *Zimmerman v. First Fed.*

---

**3.** This was actually the initial motion for judgment as a matter of law on Pegasus' implied

warranty of merchantability claim, rather than a renewed motion.

*Sav. & Loan Ass'n,* 848 F.2d 1047, 1051 (10th Cir.1988)).

■ Hamilton argues that there was insufficient evidence supporting the district court's decision to allow Pegasus' claim for breach of express warranty to go to the jury. Pegasus' claim for breach of express warranty turned on express promises allegedly made by Hamilton to Lycoming.[4] An express warranty can be created by the seller through, *inter alia,* "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." Colo.Rev.Stat. § 4–2–313(1)(a) (1992). Such an affirmation or promise creates an express warranty "that the goods shall conform to the affirmation or promise." *Id.* Similarly, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." *Id.* § 4–2–313(1)(b). No particular words are necessary to the existence of an express warranty. *Id.* § 4–2–313(2).

Pegasus' evidence concerning the existence and scope of the express warranty was based primarily on an affirmation made by Hamilton in a "Certificate of Conformance" that accompanied fuel controls refurbished by Hamilton. The Certificate contained the following language (underlining represents completed blanks):

> THE ABOVE ITEM(S) HAVE BEEN <u>AS IS TESTED/REPAIRED</u> TO THE ORIGINAL EQUIPMENT MANUFACTURER'S SPECIFICATION REQUIREMENTS IN ACCORDANCE WITH THE HAMILTON STANDARD QUALITY PROGRAM AND THE FEDERAL AVIATION ADMINISTRATION AND ARE CERTIFIED TO BE <u>SERVICEABLE.</u>

(Appellant's App. Vol. II at A771). In denying Hamilton's motion at the close of Plaintiff's case for judgment as a matter of law, the district court relied on the statement in the Certificate of Conformance that the fuel controls were serviceable, and on testimony by Plaintiff's witness, Mr. McClatchey, as to the meaning of the word "serviceable" and that the fuel controls were in fact not serviceable. (Appellant's App. Vol. I at A552.) Hamilton argues on appeal that the term "serviceable," read in context, meant only that the fuel controls were in conformance with the specifications in the contract between Lycoming and Hamilton. The meaning of the word "serviceable" was a question of fact contested by the parties at trial. We agree with the district court that, viewing the evidence in the light most favorable to the party opposing the motion for judgment as a matter of law (here, Pegasus), there was sufficient evidence such that a reasonable jury could properly find for Pegasus.

■ Even were we to disagree with the trial court as to the sufficiency of the evidence with respect to the use of the term "serviceable" in the Certificate of Conformance, we believe there was ample other evidence justifying the district court's denial of Hamilton's motion. In particular, Pegasus introduced so-called "serviceable tags" that Hamilton attached to the fuel controls.[5] Those tags contained the following pertinent language on the front and back, respectively:

> Inspected and accepted I/A/W O.E.M.'s [in accordance with original equipment manufacturer's, *i.e.* Hamilton's] latest methods procedures and specifications.
>
> . . . .
>
> The airframe, aircraft engine, propeller or appliance identified on the reverse side was maintained in accordance with current regulations of the Federal Aviation Administration and is approved for return to

---

4. "A seller's [here, Hamilton's] warranty whether express or implied extends to any person who may reasonably be expected to use, consume, or be affected by the goods and who is injured by breach of the warranty." Colo.Rev.Stat. § 4–2–318 (1992); *Lease Fin., Inc. v. Burger,* 40 Colo. App. 107, 575 P.2d 857, 861 (1977).

5. The tags used by Hamilton do not actually contain the word "serviceable," although the tag attached to the fuel control overhauled by Pratt and Whitney does contain the phrase "Serviceable Parts Tag." Pegasus did not sue Pratt and Whitney, and the district court ruled that Hamilton was not liable for any breach of warranty committed by Pratt and Whitney. (Appellant's App. at A60 n. 2.) Thus, the language on the Pratt and Whitney tag is irrelevant to the determination whether Hamilton made an express warranty of serviceability. We employ the term "serviceable tags" because it is the term used by the parties.

service with respect to the work performed.

(Appellant's App. Vol. II at A766–67.) Similarly, the Certificate of Performance stated that the fuel controls were "as is tested/repaired to the original equipment manufacturer's specification requirements." It was uncontested at trial that after installing the refurbished fuel controls, Pegasus could not attain altitudes of more than approximately 10,000 feet. Hamilton's internal specifications for the fuel control units provided that

> [t]he maximum operating altitude of the engine shall be 25,000 feet. The components of the power control system shall be designed to ensure proper functioning at altitudes up to 30,000 feet; however, performance tolerances shall be assured only up to 25,000 feet altitude.

(Appellant's App. Vol. II at A877, A887.) These internal specifications were contained in Defendant's Exhibit A–26, which was stipulated into evidence just after Pegasus' opening statement. (*Id.* Vol. I at A192.) Hamilton argues that Pegasus did not present any evidence relating to these internal specifications at trial, and specifically did not establish that Hamilton's internal specifications were part of the basis of the bargain with Lycoming because there was no evidence that Lycoming even knew of the existence of the specifications. *See* Colo.Rev.Stat. § 4–2–313(1). Hamilton's argument misses the point. Whether or not Lycoming knew the details of what Hamilton's internal specifications required is immaterial because it is evident that the serviceable tags warranted that the fuel controls were in conformance with those internal specifications, whatever they were, and it is equally evident that

Lycoming was aware of the statements made in the serviceable tags and that those statements were part of the basis of the bargain.[6] Since the uncontested testimony at trial was that the fuel controls did not function properly at altitudes well below those called for in Hamilton's internal specifications, there was ample evidence supporting the district court's decision to allow the question to go to the jury.[7]

## II. Calculation of Prejudgment Interest

■ The district court ordered that "prejudgment interest shall accrue from February 21, 1989 through the date of entry of judgment at the rate of 8% compounded annually," in accordance with Colo.Rev.Stat. § 5–12–102. (Appellant's App. Vol. I at A72.) The date of February 21, 1989, was apparently selected because it was the date on which Pegasus installed the first refurbished fuel control. Interest questions in diversity cases are determined by state law. *Quad Constr., Inc. v. Wm. A. Smith Contracting Co., Inc.*, 534 F.2d 1391, 1394 (10th Cir.1976). We review the district court's rulings on issues of state law *de novo. Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991); *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 495 (10th Cir.1992).

■ Colorado law provides for the recovery of interest "for all moneys ... after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs." Colo.Rev.Stat. § 5–12–102(1)(b). Pegasus was entitled under this section to interest from the time its action accrued. *Mesa Sand & Gravel Co. v. Landfill, Inc.*,

---

6. Hamilton also argues that any statement of conformance to Hamilton's internal specifications did not constitute an express warranty because of the comprehensive specifications imposed by Lycoming. The Colorado Uniform Commercial Code states that "[e]xact or technical specifications displace an inconsistent sample or model or general language of description." Colo.Rev.Stat. § 4–2–317(a). While Hamilton's internal specifications required tighter tolerances than the Lycoming specifications, there is no inconsistency between the two—the fuel controls could conform to both sets of specifications. Moreover, by Hamilton's own accounting, the Lycoming specifications merely set out what Lycoming would *test* for, rather than what it required. (Appellant's App. Vol. I at A563–64; Appellant's Br. at 32).

7. The jury returned a special verdict specifically finding for Pegasus on both the breach of express warranty claim and the claim of breach of the implied warranty of merchantability. (Appellant's App. Vol. I at A69–70.) Because we affirm the district court's denial of Hamilton's motion for judgment as a matter of law on the former claim and that claim, standing alone, is sufficient to support the verdict, we need not address the district court's denial of judgment as a matter of law on the claim of breach of the implied warranty of merchantability.

776 P.2d 362, 365 (Colo.1989); *Deacon v. American Plant Food Corp.*, 782 P.2d 861, 864 (Colo.App.1989), *rev'd on other grounds*, 805 P.2d 1109 (Colo.1991). While Pegasus had a cause of action for breach of express warranty from the time it first received the refurbished fuel control, it did not have a cause of action for the consequential damages until those damages were actually incurred, *i.e.*, when it suffered the loss of each business opportunity or otherwise actually incurred the damages. *Deacon*, 782 P.2d at 864. We therefore hold that the district court erred in awarding prejudgment interest from the time of the initial breach of the express warranty, and we remand for a recalculation of prejudgment interest on each portion of the damages from the time each element of the consequential damages was incurred. To the extent the district court is unable to determine, either from the record or from such additional proceedings as it deems appropriate to order, on which elements of the consequential damages the jury based its award of damages, the district court should select a reasonable intermediate date from which to award prejudgment interest. *See, e.g., Woodling v. Garrett Corp.*, 813 F.2d 543, 561 (2d Cir.1987). While we have been unable to find Colorado authority directly on point, we believe the Colorado courts would follow this sensible rule.

AFFIRMED in part and REVERSED in part and REMANDED with instructions.