Linda LOUGHRIDGE, William P. Loughridge, Jerry Hannah, Nancy Hannah, Donna L. Garth, Ronald Hochfield, and Marsha Hochfield, Balaju, L.L.C., a Colorado limited liability company, Dale V. Kesler, Judith A. Kesler, Rosemarie Glas, Christopher W. Congalton, Susan T. Congalton, Claire Beck, Dr. Calvin Daks and Carol Daks, Justine Parker, Howard G. Parker, Janet Sutterley, Randy Kilgore, Sue Taylor, Darrell Taylor, Janet G. Upton and Charles R. Upton, Robert B. Grossman, Gale K. Grossman, Mark A Lathrop, Susan K. Lathrop, Janice C. Meyer, Gary Q. Barnett and Julia Watson Barnett, Robert S. Julian and Corey Bender Mindlin, Addison L. Piper, Richard C. Raczuk, Claudette L. Raczuk, Thomas A. Hardilek, Sandra J. Hardilek, and Fuyu Farms, a Colorado general partnership, Donald K. Hagar, Leila M. Hagar, Donald M. Johnson, Teresa Y. Johnson, Steve Shuman, Karen Shuman, David Price, Mary Price, Tim Borden, Janet Borden, John W. Paul, Linda T. Paul, Marcus Meyer, Karrie Meyer, James C. Holzwarth, Niki K.

Holzwarth, Martha W. Hibbard, Robert C. Comyn, Noelle L. Comyn, Kiefer Mendenhall, Mary Mendenhall, and William F. Gorog on behalf of the Grantor Retained Income Trust, Plaintiffs,

v.

GOODYEAR TIRE AND RUBBER COMPANY, an Ohio corporation, and Chiles Power Supply Company, Inc., d/b/a Heatway Radiant Floors and Snowmelting, a Missouri corporation, Defendants.

Nos. CIV. 98–B–1302 (MJW), CIV. 98–B–1884 (MJW), CIV. 98–B–2118 (MJW), CIV. 98–B–227 (MJW), CIV. 99–B–345 (MJW), CIV. 99–B–488 (MJW), CIV. 00–B–388 (MJW), CIV. 01–B–571 (MJW).

United States District Court,
D. Colorado.

Aug. 22, 2003.

**1254**

Brian J. Berardini, Neal Keith Dunning, Brown, Berardini & Dunning, P.C., David L. Black, Holland & Hart, LLP, Denver, CO, James William Lee Gray, Holland & Hart, LLP, Greenwood Village, CO, Horton Perry Ryon, Ryon & Associates, Evergreen, CO, for plaintiffs.

David L. Lenyo, Matthew C. Ferguson, Aspen, CO, Roger P. Thomasch, Stephanie M. Stewart, Ballard, Spahr, Andrews & Ingersoll, LLP, Mary A. Westphal–Wells, Lawrence Michael Brooks, Jr., Wells, Anderson & Race LLC, Denver, CO, Matthew Allan Holmes, Walter Stephen Coursol, Stephen J. Tyde, Jr., Walberg, Dagner & Tucker, P.C., Centennial, CO, Craig A. Marvinney, Michael N. Ungar, Ulmer & Berne, LLP, Cleveland, OH, Kurtis B. Reeg, Leritz, Punkert & Bruning, PC, St. Louis, MO, Randall S. Herrick–Stare, Randall S. Herrick–Stare, Atty. at Law, Washington, DC, for defendants/cross–claimants/cross–defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

Plaintiffs brought suit in eight consolidated cases under Colorado state law against Defendants Goodyear Tire and Rubber Company ("Goodyear") and Chiles Power Supply d/b/a Heatway Radiant Floors and Snowmelting ("Heatway"). Goodyear and Heatway also brought cross-claims against each other. Following a seven-week jury trial, the jury returned verdicts that favored three of the Plaintiffs' remaining claims, but denied the other two. The jury declined to award either defendant's cross-claim. Plaintiffs now move for prejudgment interest. The motion is adequately briefed and oral argument would not materially aid its resolution. For the reasons set forth below, I grant the motion.

### I. Facts

The facts of this case are set forth in *Loughridge v. Goodyear Tire & Rubber Co.*, 192 F.Supp.2d 1175 (D.Colo.2002), and need not be fully repeated herein. At issue in this case was a hose manufactured for hydronic radiant heating systems. The systems circulate warm fluid under indoor flooring as an alternative to conventional heating systems, or under driveways and sidewalks to melt snow and ice. Goodyear manufactured and sold a hose, the Entran II, for use in Heatway's radiant systems. Plaintiffs tried claims for sale of a defective product, negligence, negligent failure to warn, violation of the Colorado Consumer Protection Act, and civil conspiracy against Goodyear. Some plaintiffs also tried remaining claims for violation of the Colorado Consumer Protection Act and civil conspiracy against Heatway. The claims generally asserted system failure and home damage caused by the defective Entran II hose.

After a seven-week trial, the jury returned verdicts in favor of all but one remaining Plaintiff and against Goodyear on three theories of recovery: strict liability, negligence, and negligent failure to warn. The jury found in favor of Goodyear and Heatway on Plaintiffs' claims for civil conspiracy and violation of the Colorado Consumer Protection Act. Though Heatway was not a defendant on the Plaintiffs' prevailing claims, the jury divided fault evenly between Goodyear and Heatway (as a non-party at fault), finding them each one-half liable for repair and replacement costs, but not liable for any diminution in value the systems may have caused the homes. The jury also awarded some Plaintiffs other reasonable costs or losses associated with the Entran II's failure. Neither defendant prevailed on its cross claim. Plaintiffs move for prejudgment interest.

## II. Motion for Prejudgment Interest

Colorado Revised Statute § 5–12–102 provides for recovery of prejudgment interest,

> at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs. Colo.Rev.Stat. § 5–12–102(1)(b).

Goodyear does not challenge the Plaintiffs' entitlement to prejudgment interest. Likewise, Plaintiffs and Goodyear have stipulated to three separate amounts of prejudgment interest for each prevailing plaintiff. *See* Appendix A. The amounts correspond to computation of prejudgment interest from three distinct accrual dates until the date a verdict was reached on June 19, 2003. The parties have also submitted three *per diem* amounts corresponding to the same accrual dates for interest awarded on and after June 20,

2003. *See* Appendix B. Though the parties dispute the appropriate accrual dates for prejudgment interest, they do not dispute the mathematical calculations corresponding to each accrual date for each prevailing plaintiff. I therefore focus my analysis on the only remaining dispute at issue—the date from which, under Colorado law, prejudgment interest began to accrue.

### A. Date of "Wrongful Withholding"

The purpose of section 5–12–102 is to discourage a person responsible for payment of a claim to stall and delay payment until judgment or settlement. *Mesa Sand & Gravel Co. v. Landfill, Inc.,* 776 P.2d 362, 364 (Colo.1989). The section "recognizes the time value of money. It represents a legislative determination that persons suffer a loss when they are deprived of property to which they are legally entitled." *Id.* The section therefore "compensates the nonbreaching party for the loss of money or property to which he or she is otherwise entitled and thereby furthers the legislative purpose of section 5–12–102." *Id.* at 365. I construe the section in light of its legislative intent and purpose, "mindful that [it] should not be strictly construed." *Id.*

Plaintiffs contend that under Colo.Rev. Stat. § 5–12–102(1)(b) their repair, replacement, and other costs were "wrongfully withheld" from the time Entran II was installed in their respective homes because it was defective at that time. Goodyear argues that the prejudgment interest did not accrue until Plaintiffs actually replaced their systems or filed suit. I agree with Plaintiffs.

In *Estate of Korf v. A.O. Smith Harvestore Prods., Inc.,* 917 F.2d 480 (10th Cir. 1990), the Tenth Circuit considered the appropriate accrual date in a case involving purchase of a defective product. There, plaintiffs had purchased a defective

silo that resulted in the loss of corn crop profits. *Id.* at 482. The Court held that "money was wrongfully withheld from the Korfs on the date they were fraudulently induced to undertake the obligation for the defective Harvestore silo." *Id.* at 486.

■ From the inception of this case, Plaintiffs have claimed defects in the Entran II hose as manufactured by Goodyear. The jury found in favor of Plaintiffs' claims that Entran II was a defective product, that Entran II was manufactured negligently, and that Goodyear negligently failed to warn Plaintiffs about Entran II's weaknesses. As in *Korf*, Goodyear's defective product—whether functional for a time or not—was defective from the time of installation. Accordingly, funds owed for such replacement were wrongfully withheld starting at the time of installation.

### 1. Goodyear's Contentions under Pegasus and Coleman

Goodyear contends that under *Pegasus Helicopters, Inc. v. United Tech. Corp.*, 35 F.3d 507 (10th Cir.1994) and *Coleman v. United Fire & Cas. Co.*, 767 P.2d 761 (Colo.Ct.App.1988), Plaintiffs' cause of action did not accrue until Plaintiffs paid for or replaced their heating systems. I disagree.

In *Pegasus Helicopters, Inc. v. United Tech. Corp.*, 35 F.3d 507 (10th Cir.1994), the Tenth Circuit considered the appropriate accrual date under Colo.Rev.Stat. § 5–12–102. There, Pegasus had leased helicopters from the defendants for use in heavy lifting contracts such as building ski lifts, logging, and installing air conditioning units in commercial buildings. *Id.* at 509. In February 1989, the fuel control unit in Pegasus' helicopter was scheduled for overhaul. *Id.* In order to continue its business during that overhaul, Pegasus leased replacement fuel control units. *Id.*

From that time on, Pegasus alleged, the helicopter did not function properly. *Id.*

Pegasus brought suit "seeking to recover for economic losses allegedly suffered as a result of the failure of its helicopter to perform as needed, which Pegasus blamed on the allegedly faulty fuel controls." *Id.* at 510. The district court ordered prejudgment interest to accrue from February 21, 1989, the date Pegasus began to incur difficulties with the helicopter. *Id.* The Tenth Circuit reversed, concluding that,

> [w]hile Pegasus had a cause of action for breach of express warranty from the time it first received the refurbished fuel control, it did not have a cause of action for the consequential damages until those damages were actually incurred, i.e., when it suffered the loss of each business opportunity or otherwise actually incurred the damages. *Id.* at 513 (internal citation omitted).

Goodyear's contention fails to recognize that the *Pegasus* plaintiff sought different damages than the Plaintiffs in this case. In *Pegasus*, the plaintiff sought consequential damages for the loss of business opportunity. *Id.* at 513. The Tenth Circuit reasoned that cause of action not to accrue until the damages were incurred by a loss of business opportunity due to the deficient helicopter. *Id.* Here, Plaintiffs' damages are not contingent upon any incident occurring after installation. Because the Entran II hose was deficient as manufactured, Plaintiffs' right to replacement, repair and associated costs began at the moment that defective hose was installed. To hold otherwise would suggest that the Entran II hose was a suitable product until the time of its failure. That suggestion directly contradicts the jury's finding that Entran II was a defective product as manufactured.

Goodyear's contentions regarding *Coleman v. United Fire and Casualty Co.*, 767

P.2d 761 (Colo.Ct.App.1988) are also not persuasive. In *Coleman,* the Colorado Court of Appeals considered the accrual of prejudgment interest where plaintiffs recovered for a faulty roof replacement and subsequent repairs. The trial court held the Plaintiffs' claims to accrue on two separate dates. *Id.* at 764. For its replacement costs, the trial court awarded prejudgment interest from the date of the initial substandard roof replacement. *Id.* For subsequent repair costs, the trial court awarded interest from the time Plaintiffs demanded those costs from the defendant. *Id.* The Colorado Court of Appeals upheld the trial court's accrual dates. *Id.* Goodyear contends that Plaintiffs' prejudgment interest must accrue from the time of repair and replacement like the *Coleman* plaintiffs.

However, the *Coleman* court considered damages for a *deficient replacement* and subsequent repairs. Here, repair and replacement are the *remedies* to a prior occurring breach—the installation of defective Entran II hose. *Coleman* therefore does not support Goodyear's position. Rather, *Coleman's* award from the date of the initial wrong (upon roof replacement) supports Plaintiffs' argument that it is owed prejudgment interest upon the defendants' initial wrong (at installation). Goodyear's assertions with regard to *Pegasus* and *Coleman* are not persuasive.

*2. Goodyear's Statute of Limitations Argument*

■ Finally, Goodyear contends that if Plaintiffs' claims accrued when their systems were installed then many of the Plaintiffs' claims are barred by the statute of limitations. That argument, however, was rejected by the Colorado Court of Appeals in *Eads v. Dearing,* 874 P.2d 474, 478 (Colo.Ct.App.1993) ("The date when a claim accrues for statute of limitations purposes is independent from the date of the wrongful withholding for the purpose of awarding interest").

In sum, I award Plaintiffs prejudgment interest beginning on the date Entran II was installed in each individual's respective home and ending on the date of judgment.

Accordingly, IT IS ORDERED that:

1. Plaintiffs' motion for prejudgment interest is GRANTED;

2. Prejudgment interest shall be awarded on Plaintiffs' damages awards at eight percent per annum compounded annually. The interest period shall begin the dates that Entran II was installed in each Plaintiff's respective home, and end the date judgment is entered, as reflected by the following:

   (a) Plaintiffs are awarded prejudgment interest from the date of installation until June 19, 2003, in the amounts stipulated in Appendix A attached hereto and incorporated herein by reference; and

   (b) Plaintiffs are awarded prejudgment interest from June 20, 2003 until the date judgment is entered pursuant to the daily *per diem* rates stipulated in Appendix B that are attached hereto and incorporated herein by reference; and

3. Final judgment shall enter in accordance with the Orders of the Court and verdicts of the jury.

APPENDIX A

*Loughridge, et al. v. Goodyear, et al.*
Pre-Judgment Interest trigger dates

| Homeowner | Judgment Amount Against Goodyear | Date Product Installed | Prejudgment Interest from this date | Problem/ 1st Leak Date | Prejudgment Interest from this date | Date* Complaint Filed or First Expenditure | Prejudgment Interest from this date |
|---|---|---|---|---|---|---|---|
| Balaju | $165,765 | 1993 | $178,092 | Feb-98 | $85,219 | 8/13/1998 | $75,129 |
| Barnett | $12,750 | 1992 | $15,814 | Feb-95 | $11,574 | 6/8/1999 | $4,642 |
| Beck | $42,694 | 1993 | $45,869 | May-96 | $31,278 | 10/29/1999 | $13,847 |
| Borden | $108,787 | 1990 | $175,545 | 3/15/95 | $96,895 | Nov-00 | $24,499 |
| Comyn | $112,254 | 1992 | $139,230 | 11/21/96 | $74,117 | Jul-01 | $18,360 |
| Congalton | $87,050 | 1990 | $140,469 | 3/7/95 | $77,817 | 10/29/1999 | $28,232 |
| Daks | $324,222 | 1992 | $402,137 | 3/8/97 | $202,005 | 10/29/1999 | $105,152 |
| Fuyu Farms | $120,960 | 1989 | $220,479 | 4/26/93 | $143,389 | Jul-00 | $31,044 |
| Garth | $205,596 | 1991 | $291,957 | Oct-99 | $68,268 | 11/12/1999 | $65,884 |
| Grossman | $45,000 | 1992 | $55,814 | Apr-97 | $27,661 | 2/1/1999 | $18,087 |
| Hagar | $46,787 | 1993 | $50,266 | 2/1/99 | $18,805 | Mar-00 | $13,572 |
| Hannah | $151,009 | 1992 | $187,299 | 2/5/97 | $95,714 | Jun-99 | $55,293 |
| Hardilek | $79,500 | 1993 | $85,412 | Feb-00 | $23,698 | 2/18/2000 | $23,325 |
| Hibbard | $90,012 | 1993 | $96,706 | 9/10/99 | $30,410 | 3/30/2001 | $16,842 |
| Hochfield | $37,224 | 1993 | $39,992 | 11/1/99 | $12,042 | 11/12/1999 | $11,929 |
| Holzwarth | $121,536 | 1990 | $196,117 | 4/15/91 | $189,074 | Oct-00 | $28,333 |
| Johnson | $22,288 | 1993 | $23,945 | 12/15/97 | $11,803 | Sep-00 | $5,367 |
| Julian | $212,673 | 1992 | $263,781 | 1/26/97 | $135,538 | Jan-99 | $87,447 |
| Kesler | $206,000 | 1991 | $292,530 | 1/24/96 | $158,500 | 9/30/1998 | $90,416 |
| Lathrop | $122,933 | 1991 | $174,571 | Dec-97 | $64,466 | 2/1/1999 | $49,411 |
| Loughridge | $174,229 | 1990 | $281,145 | Jan-92 | $247,325 | 3/12/1998 | $87,382 |
| Mendenhall | $147,582 | 1992 | $183,048 | Dec-93 | $160,497 | 8/10/2001 | $22,741 |
| J. Meyer | $38,854 | 1991 | $55,175 | 5/1/95 | $33,866 | 6/8/1999 | $14,145 |
| M. Meyer | $76,947 | 1990 | $124,166 | 7/15/93 | $88,367 | 1998 | $31,662 |
| Mindlin | $51,693 | 1992 | $73,380 | 11/6/96 | $34,401 | 5/1/98 | $25,093 |
| Parker | $78,205 | 1991 | $111,055 | 5/11/94 | $79,532 | 2/4/99 | $31,364 |
| Paul | $159,580 | 1990 | $257,507 | 2/28/93 | $193,474 | 3/30/01 | $29,859 |
| Piper | $183,660 | 1991 | $260,806 | 12/1/91 | $263,622 | 2/18/00 | $53,885 |
| Price | $267,447 | 1990 | $431,567 | 6/8/93 | $311,596 | 3/30/01 | $50,041 |
| Raczuk | $128,000 | 1990 | $206,548 | 2/1/95 | $116,189 | 2/18/00 | $37,555 |
| Shuman | $95,209 | 1993 | $102,289 | 1998 | $39,177 | Jul-00 | $24,435 |
| Sutterley | $120,036 | 1990 | $193,697 | July-98 | $55,943 | 2/4/99 | $48,140 |
| Taylor | $160,159 | 1991 | $227,434 | 6/23/98 | $75,024 | 2/4/1999 | $64,231 |
| Upton | $82,761 | 1991 | $117,525 | 1995 | $64,424 | 2/4/99 | $33,191 |
| TOTALS | $4,079,392 | | $5,701,367 | | $3,321,710 | | $1,320,535 |

* - Whichever is earlier.

APPENDIX B

*Loughridge, et al. v. Goodyear, et al.*
Pre-Judgment Interest trigger dates

| Homeowner | Judgment Amount Against Goodyear | Date Product Installed | Per Diem from June 20, 2003 to present | Problem/ 1st Leak Date | Per Diem from June 20, 2003 to present | Date* Complaint Filed or First Expenditure | Per Diem from June 20, 2003 to present |
|---|---|---|---|---|---|---|---|
| Balaju | $165,765 | 1993 | $72.63 | Feb-98 | $53.38 | 8/13/1998 | $49.43** $53.38*** |
| Barnett | $12,750 | 1992 | $6.03 | Feb-95 | $5.17 | 6/8/1999 | $3.80 |
| Beck | $42,694 | 1993 | $18.71 | May-96 | $16.04 | 10/29/1999 | $11.79 |
| Borden | $108,787 | 1990 | $60.04 | 3/15/95 | $44.13 | Nov-00 | $27.81 |
| Comyn | $112,254 | 1992 | $53.12 | 11/21/96 | $39.04 | 7/31/01 | $26.57** $28.70*** |
| Congalton | $87,050 | 1990 | $48.05 | 3/7/95 | $35.31 | 10/29/1999 | $24.03 |
| Daks | $324,222 | 1992 | $153.42 | 3/8/97 | $112.77 | 10/29/1999 | $89.52 |
| Fuyu Farms | $120,960 | 1989 | $72.10 | 4/26/93 | $57.24 | 7/31/00 | $30.92** $33.40*** |
| Garth | $205,596 | 1991 | $105.07 | Oct-99 | $56.77 | 11/12/1999 | $56.77 |
| Grossman | $45,000 | 1992 | $21.29 | Apr-97 | $15.65 | 2/1/1999 | $13.42 |
| Hagar | $46,787 | 1993 | $20.50 | 2/1/99 | $13.95 | Mar-00 | $12.92 |
| Hannah | $151,009 | 1992 | $71.46 | 2/5/97 | $52.52 | 6/30/99 | $41.69** $45.03*** |
| Hardilek | $79,500 | 1993 | $34.83 | Feb-00 | $21.95 | 2/18/2000 | $21.95 |
| Hibbard | $90,012 | 1993 | $39.44 | 9/10/99 | $24.85 | 3/30/2001 | $23.01 |
| Hochfield | $37,224 | 1993 | $16.31 | 11/1/99 | $10.28 | 11/12/1999 | $10.28 |
| Holzwarth | $121,536 | 1990 | $67.08 | 4/15/91 | $67.08 | Oct-00 | $31.07 |
| Johnson | $22,288 | 1993 | $9.77 | 12/15/97 | $7.18 | Sep-00 | $5.70 |
| Julian | $212,673 | 1992 | $100.63 | 1/26/97 | $73.97 | Jan-99 | $63.42 |
| Kesler | $206,000 | 1991 | $105.28 | 1/24/96 | $77 | 9/30/1998 | $61.43 |
| Lathrop | $122,933 | 1991 | $62.82 | Dec-97 | $39.59 | 2/1/1999 | $36.66 |
| Loughridge | $174,229 | 1990 | $96.16 | Jan-92 | $89.04 | 3/12/1998 | $56.11 |
| Mendenhall | $147,582 | 1992 | $69.83 | Dec-93 | $64.66 | 8/10/2001 | $34.93** $37.73*** |
| J. Meyer | $38,854 | 1991 | $19.86 | 5/1/95 | $15.76 | 6/8/1999 | $11.59 |
| M. Meyer | $76,947 | 1990 | $42.47 | 7/15/93 | $33.71** $36.41*** | 1998 | $22.94 |
| Mindlin | $51,693 | 1992 | $24.46 | 11/6/96 | $17.98 | 5/1/98 | $16.65 |
| Parker | $78,205 | 1991 | $39.97 | 5/11/94 | $34.26 | 2/4/99 | $23.32 |
| Paul | $159,580 | 1990 | $88.08 | 2/28/93 | $75.51 | 3/30/01 | $40.80 |
| Piper | $183,660 | 1991 | $93.86 | 12/1/91 | $93.86 | 2/18/00 | $50.71 |

\* – Whichever is earlier.

\*\* – Per diem from June 20, 2003 through anniversary date (in column to immediate left).

\*\*\* – Per diem from anniversary date to present.

| Homeowner | Judgment Amount Against Goodyear | Date Product Installed | Per Diem from June 20, 2003 to present | Problem/ 1st Leak Date | Per Diem from June 20, 2003 to present | Date* Complaint Filed or First Expenditure | Per Diem from June 20, 2003 to present |
|---|---|---|---|---|---|---|---|
| Price | $267,447 | 1990 | $147.61 | 6/8/93 | $126.55 | 3/30/01 | $68.37 |
| Raczuk | $128,000 | 1990 | $70.65 | 2/1/95 | $51.93 | 2/18/00 | $35.34 |
| Shuman | $95,209 | 1993 | $41.71 | 1998 | $28.39 | 7/31/00 | $24.34**<br>$26.29*** |
| Sutterley | $120,036 | 1990 | $66.25 | 7/31/98 | $35.79**<br>$38.66*** | 2/4/99 | $35.79 |
| Taylor | $160,159 | 1991 | $81.85 | 6/23/98 | $47.76**<br>$51.58*** | 2/4/1999 | $47.76 |
| Upton | $82,761 | 1991 | $42.29 | 1995 | $31.09 | 2/4/99 | $24.68 |

* - Whichever is earlier.
** - Per diem from June 20, 2003 through anniversary date (in column to immediate left).
*** - Per diem from anniversary date to present.